Peter M. Hart, (State Bar No. 107920)
Brad D. Fell, (State Bar No. 212988)
Matthew R. Halloran, (State Bar No. 236461)
WRIGHT, ROBINSON, OSTHIMER & TATUM
44 Montgomery Street, 18th Floor
San Francisco, California  94104-4705
Telephone:  (415) 391-7111
Telefax:  (415) 391-8766

Attorneys for Defendant
PACIFIC PRIDE SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| DONALD WALKER, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>PACIFIC PRIDE,<br><br>        Defendant. | Case No. C 07-2857 SC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PACIFIC PRIDE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        November 2, 2007<br>Time:       10:00 a.m.<br>Dept:        1<br>Judge:      Honorable Samuel Conti<br><br>**Trial Date: January 22, 2008** |

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

# Table of Contents

Table of Contents .................................................................................................................. p. 2

Table of Authorities ............................................................................................................. p. 3

I. Introduction ..................................................................................................................... p. 4

II. Statement of Issues to be Decided ................................................................................. p. 4

III. Pertinent Factual Background ....................................................................................... p. 4

    A. Plaintiff's Accident ................................................................................................... p. 4

    B. The Nature of Pacific Pride's Business
       And SF Petroleum's Business .................................................................................. p. 5

    C. Pacific Pride And SF Petroleum's
       Franchise Agreement ............................................................................................... p. 6

IV. Argument ....................................................................................................................... p. 9

    A. The Legal Standard .................................................................................................. p. 9

    B. Summary Judgment or Partial Summary Judgment of
       Plaintiff's Negligence Cause of Action is Warranted
       In Pacific Pride's Favor, Because Pacific Pride Cannot
       Be Held Vicariously Liable for the Alleged Negligence
       Of Its Independent Contractor Franchisee ............................................................... p. 9

    C. Summary Judgment or Partial Summary Judgment of
       Plaintiff's Premises Liability Cause of Action is
       Warranted in Pacific Pride's Favor, Because Pacific Pride
       Has No Ownership Interest in SF Petroleum's Premises ........................................ p. 13

    D. Summary Judgment or Partial Summary Judgment of
       Plaintiff's Claim for Punitive Damages is Warranted in
       Pacific Pride's Favor, Because Plaintiff Can Present No
       Evidence that Pacific Pride Acted With Malice ..................................................... p. 13

V. Conclusion ..................................................................................................................... p. 16

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

## Table of Authorities

**Cases**

*Bank of Calif., N.A. v. Opie* (9th Cir. 1981) 663 F.2d 997 .................................................. p. 9

*Beck v. Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976 .................................................. p. 10

*Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284 .................................................. pp. 10, 11, 12

*G.D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22. .................................................. p. 14

*In re Angelina P.* (1981) 28 Cal.3d 908 .................................................. p. 14

*Kutcha v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541 .................................................. p. 10

*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174 .................................................. p. 14

*Mock v. Michigan Millers Mutual Ins.* (1994) 4 Cal.App.4th 306 .................................................. p. 14

*Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610 .................................................. p. 10

*Porter v. Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410 .................................................. p. 10

*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269 .................................................. p. 14

*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864 .................................................. p. 10

*Travelers Indem. Co. v. Armstrong* (Ind. 1982) 442 N.E.2d 349 .................................................. p. 14

*Weiss v. Chevron U.S.A., Inc.* (1988) 204 Cal.App.3d 1094 .................................................. pp. 10, 11

*Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49 .................................................. p. 10

**Statutes, Regulations, and Rules**

Federal Rules of Civil Procedure 56 .................................................. p. 9

California Civil Code § 3294 .................................................. p. 14

3

Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

## I. Introduction

Pacific Pride Services, Inc. ("Pacific Pride") is the franchisor of an automated commercial fueling transaction authorization, processing and financial settlement system utilized by San Francisco Petroleum, Inc. ("SF Petroleum"). Plaintiff Donald Walker was an employee of SF Petroleum when he was injured in the workplace accident at issue in this litigation. Because: (1) Pacific Pride is shielded from liability for the actions or omissions of its independent contractor franchisees; (2) plaintiff's accident had nothing to do with Pacific Pride's commercial fueling system; and (3) Pacific Pride has no ownership interest in SF Petroleum or its premises; defendant respectfully moves this Court for summary judgment or partial summary judgment of plaintiff's negligence and premises liability causes of action.

## II. Statement of Issues to be Decided

- Whether the terms of the franchise agreement between Pacific Pride and SF Petroleum create an agency relationship between the parties.
- Whether plaintiff's injuries resulted from any aspect of SF Petroleum's business operations that were controlled by Pacific Pride to such an extent to justify imposing an agency relationship as a matter of law, notwithstanding the agreement between the parties.
- Whether Pacific Pride can be liable under plaintiff's premises liability theory, where the facts show that Pacific Pride has no legal interest in the premises where the accident occurred.
- Whether Pacific Pride can be liable for punitive damages where plaintiff has no evidence that defendant acted with malice.

## III. Pertinent Factual Background

**A.   Plaintiff's Accident**

This case arises from a workplace accident that occurred at SF Petroleum on July 21, 2005.[1] Prior to the accident, plaintiff had been filling an SF Petroleum fuel tank from one of SF

---

[1] See excerpts from the Deposition of Plaintiff Donald Walker, attached as Exhibit A to the Declaration of Matthew

4

Petroleum's tanker trucks.[2] When plaintiff was disconnecting the hose that connected the truck to the fuel tank, roughly a pint of fuel spilled on the ground.[3] Plaintiff was cleaning up the spilled fuel in a kneeling position when he was struck by a dumpster loaded onto an SF Petroleum-owned forklift.[4] An SF Petroleum employee was operating the forklift at the time of the accident.[5]

**B.    The Nature of Pacific Pride's Business and SF Petroleum's Business**

As stated above, Pacific Pride is the franchisor of an automated commercial fueling transaction authorization, processing and financial settlement system. Its franchisees, such as SF Petroleum, attract business from companies and government entities with fleets of trucks, buses, etc., to whom they issue Pacific Pride access cards to use when fueling their vehicles. The franchisees purchase the cards from Pacific Pride and install automated card readers, or "cardlocks," at their fueling stations. When a franchisee's customer needs to refuel, he or she inserts the Pacific Pride card and enters a code that unlocks the fuel pump, thus allowing the customer to purchase fuel on credit from the franchisee that issued the access card to the customer. Pacific Pride's computerized system records the transaction, and electronically notifies the particular franchisee whose customer purchased the fuel. That franchisee then bills the customer directly and pays a fee to Pacific Pride for transaction authorization and processing.

While SF Petroleum does sell fuel to customers using Pacific Pride automated cardlocks, the vast majority of fuel sold by SF Petroleum is delivered in bulk to its customers using SF Petroleum-owned tanker trucks. Those transactions are not authorized, processed, or settled using Pacific Pride's cardlock system.[6] SF Petroleum's average monthly bulk sales not involving Pacific Pride's cardlock system amount to approximately 1,200,000 gallons of the

---

R. Halloran, p. 54: 1-3.
[2] See excerpts from the Deposition of Plaintiff Donald Walker, attached as Exhibit A to the Declaration of Matthew R. Halloran, pp. 62:6-63:8.
[3] See *id.*
[4] See excerpts from the Deposition of Plaintiff Donald Walker, attached as Exhibit A to the Declaration of Matthew R. Halloran, p. 70:3-10.
[5] See excerpts from the Deposition of Plaintiff Donald Walker, attached as Exhibit A to the Declaration of Matthew R. Halloran, pp. 70:11-71:9.
[6] *See* Declaration of Robert Falche, ¶¶ 6, 9.

5

1,340,000 gallons of fuel SF Petroleum sells each month.[7] Thus, Pacific Pride's system is used in less than 10% of SF Petroleum's fuel sales.

Of the 140,000 gallons of fuel SF Petroleum *does* sell at its cardlock site, approximately 120,000 gallons are sold to SF Petroleum's own customers.[8] SF Petroleum invoices, collects, and approves all credit for its own customers.[9] Pacific Pride collects and remits payments to SF Petroleum only for the 20,000 gallons SF Petroleum sells per month to other Pacific Pride franchisees' customers.[10]

In addition to fuel, SF Petroleum sells approximately 10,000-15,000 gallons of bulk oil and lubricants per month.[11] None of those sales are authorized processed, or settled using Pacific Pride's payment system.[12]

SF Petroleum does not purchase any of its fuel, oil, or other lubricants from Pacific Pride.[13] Pacific Pride has no ownership interest in SF Petroleum or in any part of SF Petroleum's inventory.[14]

**C.   Pacific Pride and SF Petroleum's Franchise Agreement**

SF Petroleum is a franchisee of Pacific Pride. SF Petroleum leases the land on which it operates its business from Richard Pooler, Inc. ("Pooler, Inc."), a California business entity.[15]

The Franchise Agreement ("the Agreement") controlling the business relationship between Pacific Pride and SF Petroleum at the time of plaintiff's accident was executed on March 1, 2004.[16] Pacific Pride and SF Petroleum agree that the Agreement, and all documents incorporated by reference therein, constitute the entire agreement between the parties, and govern their business relationship in full.[17]

---

[7] *See id.*
[8] Declaration of Robert Falche, ¶ 7.
[9] Declaration of Robert Falche, ¶ 8.
[10] *Id.*
[11] Declaration of Robert Falche, ¶ 11
[12] *Id.*
[13] Declaration of Robert Falche, ¶12.
[14] Declaration of Robert Falche, ¶13.
[15] See Declaration of Robert Falche, ¶ 2.
[16] See Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A.
[17] See Declaration of Cynthia R. Condon, ¶ 2; Declaration of Robert Falche, ¶ 2.

6

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

Section 11 of the Agreement is entitled "STANDARDS OF QUALITY." Section 11, subsection B states:

> The standards set forth in the Operations Manual and in this Agreement are minimum standards required for franchises in order to maintain compatible equipment and provide certain uniformity beneficial for customer recognition and usage. PACIFIC PRIDE makes no representation that these standards are sufficient for FRANCHISEE'S Sites, and FRANCHISEE has a duty and obligation to consider the surrounding circumstances of FRANCHISEE'S Sites to independently determine whether additional or higher standards should be implemented.[18]

The Operations Manual referred to in subsection B contains a number of such "minimum quality" standards. For instance, Chapter 3 of the Operations Manual is entitled "Site Preparation and Equipment." A number of the sections within Chapter 3 refer only to use and installation of automated fueling equipment, referred to by its trademark-protected name, the "Smartlock System."[19] However, Section 8 is specifically entitled "Storage Tanks."[20] That Section, read in its entirety, states: "All tanks must meet all federal, state, and local regulations. Installation specifications will vary from area to area."[21]

Chapter 9 of the Operations Manual is entitled "Maintenance, Reconciliation, and Inspections." Chapter 9, Section 1 deals with site maintenance, and states that franchise sites must be maintained to ensure that sites are safe, clean, and well lit.[22] To that end, Sections 1 and 5 respectively state that franchisees are expected to self-inspect their facilities once a year and submit an inspection report to Pacific Pride. The Manual notes, however, that franchisees are *encouraged* to review their sites throughout the year.[23]

Chapter 9, Section 2 deals specifically with fuel spills. Subsection B offers a number of *suggested* guidelines concerning spills and their prevention, including cleaning spills as soon as possible, and developing a spill contingency plan including training personnel "and maintaining

---

[18] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, B.
[19] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.3, §§ 4-7.
[20] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.3, §8.
[21] *Id.*
[22] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.9, § 1.
[23] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.9, §§ 1, 5.

7

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

an industry-approved cleanup material on hand."[24] Nowhere in the Manual are there any actual requirements or specific directions controlling the manner in which franchisees go about cleaning fuel spills at their sites.

The majority of the remainder of the Operations Manual Chapter 9 is then spent directing franchisees on the proper maintenance of the Pacific Pride Card Reader. Specifically, the Chapter goes into detail regarding: (1) how to check the Readers' batteries; (2) how often to clean and wax Card Reader stations; (3) whether franchisees should purchase canopies or covers for their Pacific Pride Card Readers; (4) how and how often to clean or replace the "Removable Lexan Plates" required for Pacific Pride's Optical Card Readers; and (5) how and how often to clean the heads of Pacific Pride's Magnetic Card Readers.[25]

Notably, the Operations Manual does not offer so much as a suggestion or recommendation as to how or whether franchisees should operate forklifts at their business sites.

Returning to the Franchise Agreement, Section 11, subsections D and E state:

> If requested by FRANCHISEE, PACIFIC PRIDE will offer the names of vendors for any equipment, inventory, supplies, or other material necessary for the operation of FRANCHISEE'S Sites. Except as specified in paragraph F below, FRANCHISEE is not obligated to purchase from these vendors, provided the products purchased by FRANCHISEE meet the required specifications set forth in the Operations Manual.[26]

> Notwithstanding the above, FRANCHISEE acknowledges that PACIFIC PRIDE does not participate in the day to day operation of FRANCHISEE'S business, nor does PACIFIC PRIDE advise it how to operate the day to day aspects of the business.[27]

Section 11, subsection F then sets forth with particularity equipment and services franchisees *are required* to purchase or use in the operation of their businesses, but all such requirements pertain strictly to the proper use and implementation of Pacific Pride's automated services.[28] Nowhere in the Agreement does Pacific Pride set forth any *requirements* directing SF Petroleum's day-to-day operations or procedures for operating fuel tanker trucks, filling fuel

---

[24] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.9, § 2.
[25] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.9.
[26] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, D.
[27] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, E.
[28] See Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, F.

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s Motion for Summary Judgment or Partial Summary Judgment**

tanks, cleaning fuel spills, operating forklifts, or moving dumpsters.

Finally, to be absolutely clear, Section 26 of the Agreement, entitled "INDEPENDENT CONTRACTOR," memorializes the parties' understanding that:

> FRANCHISEE is not an agent, legal representative, joint venturer, partner, employee, or servant of PACIFIC PRIDE for any purpose whatsoever. FRANCHISEE is an independent contractor and is in no way authorized to make any contract, agreement, warranty or representation on behalf of PACIFIC PRIDE, or create any obligation, express or implied, on behalf of PACIFIC PRIDE. FRANCHISEE shall prominently display in its place of business a certificate stating that the business is independently owned and operated by FRANCHISEE as a FRANCHISEE of PACIFIC PRIDE, and not as an agent.[29]

### IV. Argument

**A.    The Legal Standard**

A party against whom a claim is asserted may, at any time, move for a summary judgment in the party's favor as to all or any part thereof.[30] The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law.[31]

In diversity actions, the state law creating the right sued upon governs issues such as the elements of the action, measure of damages, applicable defenses, etc.[32]

**B.    Summary Judgment or Partial Summary Judgment of Plaintiff's Negligence Cause of Action is Warranted in Pacific Pride's Favor, Because Pacific Pride Cannot be Held Vicariously Liable for the Alleged Negligence of its Independent Contractor Franchisee.**

The general rule in the field of franchise agreements is that franchisees are independent contractors, not agents, and thus franchisors cannot be held vicariously liable for their franchisees' alleged negligence. The exception to the rule occurs when the Courts impose an agency relationship between franchisors and franchisees as a matter of law.

The question of whether the franchisee is an independent contractor or an agent is

---

[29] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 26.
[30] Federal Rules of Civil Procedure ("FRCP") 56(b).
[31] FRCP 56(c).
[32] *Bank of Calif., N.A. v. Opie* (9th Cir. 1981) 663 F.2d 997, 980.

9

ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee.[33] *Only when the essential facts are not in conflict will an agency determination be made as a matter of law.*[34] Where a franchisor does *not* exercise sufficient control to create an agency relationship, the franchisee is treated as an independent contractor and the general rule of no vicarious franchisor liability applies.[35]

The California case law dealing with the question of potential franchisor vicarious liability was thoroughly analyzed by the California Court of Appeals in *Cislaw v. Southland Corp.*[36] In *Cislaw*, the parents of a seventeen year old boy brought a wrongful death suit, alleging that their son's death was caused by his use of Djarum clove cigarettes. The parents sued Southland Corp., the owner of the 7-Eleven trademark, and franchisor of the 7-Eleven store that sold the product to their son. After thoroughly reviewing the case law,[37] the Court concluded:

> The cases, taken as a whole, impliedly recognize that the franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent.[38]

After turning to the specific facts of the case and analyzing the franchise agreement between Southland, Corp. and its franchisee, the Court rejected plaintiff's assertion that the facts of the case made it analogous to *Kutcha v. Allied Builders*,[39] in which the Court *did* determine that the parties entered into an agency relationship. Specifically, the Court noted:

> [I]n *Kuchta v. Allied Builders Corp., supra*, 21 Cal.App.3d 541, the franchise agreement gave the franchisor most of the rights which the Cislaws point to here, but also the right to control the builder franchisee's performance of every detail of

---

[33] *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547.
[34] *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 55.
[35] See generally *Cislaw v. Southland Corp.* (4th Dist. 1992) 4 Cal.App.4th 1284 (wherein the Court denied plaintiffs' appeal from a summary judgment entered in favor of a 7-Eleven franchisor, where the franchisor did not run the day-to-operations of the store, make hiring and firing decisions, etc.).
[36] *Id.*
[37] The cases analyzed by the Court in *Cislaw* include *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864; *Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094; *Wickham, supra*, 168 Cal.App.3d 49; *Kutcha, supra*, 21 Cal.App.3d 541; *Porter v. Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410; *Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610; and *Beck v. Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976.
[38] *Id.* at 1292.
[39] *Kutcha, supra*, 21 Cal.App.3d 541.

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

its construction, from plans and specifications through work in progress to completion of the project. (Id. at p. 547.) Thus, there was evidence sufficient to support an implied finding of agency.[40]

Finding no such evidence in *Cislaw*, the Court ruled that the parties' franchise agreement could not provide a basis for finding the existence of an agency relationship.[41]

The Court of Appeals offered another instructive opinion—under facts more closely analogous to those at issue here—in the case of *Weis v. Chevron, U.S.A., Inc.*[42] In *Weis*, the plaintiff attempted to hold defendant franchisor Chevron vicariously liable for injuries sustained in an automobile accident with an employee of a franchisee service station.[43] Summary judgment in favor of the franchisor was affirmed.

On appeal, the plaintiff argued that a triable issue of fact arose from evidence of "Chevron's control over the enterprise."[44] The court noted that plaintiff neither presented a factual basis nor identified any relevant policy considerations warranting a departure from the general rule of nonliability.[45] The only evidence before the trial court, the contracts and leases between Chevron and its franchisee, expressly limited Chevron's involvement in the performance and direction of business activities.[46] Moreover, Chevron had no right to hire, fire, or to otherwise exercise any control over the franchisee's employees.[47] Finally, the court noted that plaintiff offered no evidence of any connection between the cause of plaintiff's injuries and any aspect of the business over which Chevron exerted any control.[48]

In this case, plaintiff has not, and cannot produce any evidence that Pacific Pride *actually* exercised sufficient control over SF Petroleum's day-to-day operations to create an agency relationship, because no such evidence exists. Pacific Pride's only specific controls over SF Petroleum's operations related to the use and implementation of the Pacific Pride cardlock

---

[40] *Cislaw, supra,* 4 Cal.App.4th at 1296.
[41] *Id.*
[42] *Weiss, supra,* 204 Cal.App.3d 1094.
[43] See *id.*
[44] *Id.* at p. 1100.
[45] *Id.*
[46] See *id.*
[47] *Id.*
[48] *Id.*

11

Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

system. That system had nothing to do with plaintiff's accident or injuries in this matter.

By plaintiff's own admission, he was injured when struck by a forklift while in the process of cleaning a fuel spill. Pacific Pride does not refine, process, or sell fuel, it does not own or sell fuel tanks, and it does not refill fuel tanks. The only specific mention of fuel tanks in Pacific Pride's Operations Manual simply asks franchisees to follow federal, state, and local regulations.

The Operations Manual offers even less direction to franchisees in the manner in which they clean fuel spills, simply *suggesting* that they clean spills quickly, follow industry standards, etc.

Finally, Pacific Pride absolutely *does not*, and never has advised franchisees on proper forklift operation. That is simply not part of Pacific Pride's business. All that Pacific Pride does is sell fueling cards to its franchisees, provide the Pacific Pride cardlock system so that the cards can be used to purchase fuel, and then electronically process the purchase transactions that follow.

Thus, as in *Cislaw*, the issue before this Court is whether Pacific Pride and San Francisco Petroleum's franchise agreement in and of itself created an agency relationship between the parties. While that agreement sets forth some minimum franchisee standards in the interest of protecting Pacific Pride's trade and service marks, it specifically states that, "FRANCHISEE acknowledges that PACIFIC PRIDE does not participate in the day to day operation of FRANCHISEE'S business, nor does PACIFIC PRIDE advise it how to operate the day to day aspects of the business."[49] The agreement does not give Pacific Pride any right to hire or fire any of SF Petroleum's employees, or to exercise any control over those employees. Finally, in order to be absolutely clear, the parties' agreement specifically includes the Independent Contractor Section reproduced in its entirety above, memorializing the parties' understanding that: "FRANCHISEE is not an agent, legal representative, joint venturer, partner, employee, or

---

[49] See Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, E.

12

Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

servant of PACIFIC PRIDE for any purpose whatsoever."[50]

In short, plaintiff has yet to state any facts or propose any theory under which Pacific Pride can be held vicariously liable for plaintiff's injuries. Accordingly, defendant respectfully requests that this Court grant summary judgment or partial summary judgment of plaintiff's negligence cause of action in Pacific Pride's favor.

### C. Summary Judgment or Partial Summary Judgment of Plaintiff's Premises Liability Cause of Action is Warranted in Pacific Pride's Favor, Because Pacific Pride has no Ownership Interest in SF Petroleum's Premises.

As noted above, SF Petroleum leases the land upon which it operates its business from Richard K. Pooler, Inc., a California corporation. Pacific Pride has no affiliation with Pooler, Inc. whatsoever, and absolutely no ownership interest in the property at issue. Accordingly, Pacific Pride contends that it is entitled to summary judgment or partial summary judgment of plaintiff's premises liability cause of action as well.

### D. Summary Judgment or Partial Summary Judgment of Plaintiff's Claim for Punitive Damages is Warranted in Pacific Pride's Favor, Because Plaintiff Can Present No Evidence that Pacific Pride Acted With Malice.

Plaintiff filed a motion for leave to amend plaintiff's complaint to request punitive damages when this matter was still before the California State Court.[51] The case was removed to Federal Court before plaintiff's motion was heard. Plaintiff's counsel has since indicated that plaintiff still intends to amend his complaint to seek punitive damages. However, as of the time that defendant filed this motion, plaintiff had yet to do so. Nevertheless, in the interest of exhausting all potential issues in their totality, defendant will address plaintiff's punitive damages claim here.

Pursuant to the California Civil Code, "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may

---

[50] See Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 26.
[51] *See* Plaintiff's Notice of Motion and Motion for Leave to Amend Complaint to Request Punitive Damages and supporting Memorandum of Points and Authorities ("Plaintiff's Motion for Leave to Amend"), attached to the Declaration of Matthew R. Halloran as Exhibit B.

13

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

recover damages for the sake of example and by way of punishing the defendant."[52] Punitive damages are not available to a plaintiff unless the evidence is "'so clear as to leave no substantial doubt;' 'sufficiently strong to command the unhesitating assent of every reasonable mind.'"[53]

The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages.[54] Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level that decent citizens should not have to tolerate.[55] "In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud, or malice. (Civ. Code. § 3294.) He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights."[56] "'[P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of mistake of law or fact, honest error of judgment, over-zealousness, mere negligence, or other such noniniquitous human failing.'"[57]

In the memorandum of point and authorities plaintiff filed in State Court in support of plaintiff's request for punitive damages, plaintiff argued that Pacific Pride's "conscious disregard for human safety constitutes malice."[58] More specifically, plaintiff argued that Pacific Pride's failure to take remedial measures following plaintiff's accident constitutes: "*despicable conduct* which puts the health of its franchisee employees and customers at risk on a daily basis, *all in the name of profit.*"[59]

In so arguing, plaintiff fails to grasp the legal standard for obtaining punitive damages,

---

[52] California Civil Code § 3294(a).
[53] *Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1190, citing *Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 332-333.
[54] *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287-1288 (citing *In re Angelina P.* (1981) 28 Cal.3d 908, 919, which states: "'clear and convincing' evidence requires a finding of high probability ... requiring that the evidence be 'so clear as to leave no substantial doubt'").
[55] *Tomaselli, supra,* 25 Cal.App.4th at 1287.
[56] *G.D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 32.
[57] *Tomaselli, supra,* 25 Cal.App.4th at 1288, fn. 14 (quoting *Travelers Indem. Co. v. Armstrong* (Ind. 1982) 442 N.E.2d 349, 362).
[58] *See* Plaintiff's Motion for Leave to Amend, attached to the Declaration of Matthew R. Halloran as Exhibit B, p.3.
[59] *See id.* at p.4.

14

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

and again fails to grasp the nature of the business relationship between Pacific Pride and SF Petroleum.

First of all, it does not particularly matter what Pacific Pride may or may not have done since the accident. To be awarded punitive damages, plaintiff must show that Pacifc Pride acted with intent to injure, vex, annoy, or with conscious disregard to *plaintiff's* rights. Plaintiff's assertion that Pacific Pride should have taken some action on behalf of other third party employees following plaintiff's accident is irrelevant.

Moreover, in accordance with the franchise agreement between Pacific Pride and SF Petroleum as documented more fully above,[60] Pacific Pride simply has no business overseeing SF Petroleum's day-to-day operations, managing its employees, or acting as a guarantor of its employees' safety. That is particularly the case here, where the accident in question had nothing whatsoever to do with Pacific Pride's cardlock system, the only aspect of SF Petroleum's business over which Pacific Pride did exercise some control.

Those facts notwithstanding, counsel for the plaintiff had the opportunity to depose Robert Falche, the President of SF Petroleum, in August 2006. Plaintiff's counsel asked: "in the time that you have been the owner or partner in this business, have there been any other serious accidents at this site?"[61] Mr. Falche, a part owner of SF Petroleum since 1990, answered: "No."[62]

With this having been the only serious accident to occur at SF Petroleum, plaintiff's argument that Pacific Pride's conduct constituted malice must fail. Pacific Pride had no prior notice of any unsafe practices at SF Petroleum, and even if it had, it's difficult to imagine what plaintiff would have had Pacific Pride do to prevent plaintiff's accident. Plaintiff was hit by a dumpster loaded onto a forklift while he was crouched on the ground cleaning a fuel spill. Perhaps if a Pacific Pride representative happened to be at the exact location of the accident at

---

[60] *See supra,* § III(C).
[61] See excerpts of the deposition of Robert Falche, attached to the Declaration of Matthew R. Halloran as Exhibit C, p. 20: 9-12.
[62] See excerpts of the deposition of Robert Falche, attached to the Declaration of Matthew R. Halloran as Exhibit C, p. 20: 13.

**Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

the exact time it was taking place, he or she might have been able to intervene before the accident occurred. But to impose such a duty upon Pacific Pride to micromanage SF Petroleum's operations to that extent would run directly contrary to the intent and to the plain meaning of the business agreement between the parties.

### V. Conclusion

Plaintiff's injuries were suffered in the course of his employment with San Francisco Petroleum, Inc. San Francisco Petroleum, Inc. is an independent contractor franchisee of Pacific Pride Services, Inc. Thus, Pacific Pride cannot be held vicariously liable for any injuries plaintiff sustained as a result of his employer's or coworkers' negligence.

Pacific Pride Services, Inc. has no ownership interest in San Francisco Petroleum, Inc.'s property. Thus, Pacific Pride cannot be held liable for plaintiff's injuries under plaintiff's premises liability theory either.

Finally, plaintiff can state no legitimate grounds justifying an award of punitive damages in this case.

Accordingly, defendant again respectfully requests that the Court grant summary judgment or partial summary judgment of both of plaintiff's causes of action in Pacific Pride's favor, and against plaintiff's claim for punitive damages.

DATE: September 28, 2007

WRIGHT ROBINSON OSTHIMER & TATUM

by: _____
PETER M. HART
MATTHEW R. HALLORAN
Attorneys for defendant
PACIFIC PRIDE SERVICES, INC.

16

Memorandum of Points and Authorities in Support of Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment