1  MARK L. WEBB, ESQ. (BAR NO. 067959)
   LAW OFFICES OF MARK L. WEBB
2  214 Grant Street, Suite 301
   San Francisco, CA 94108
3  Telephone: (415) 621-4500
   Facsimile: (415) 621-4173
4

5  Attorneys for Plaintiff
   DONALD WALKER
6

7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO

10  DONALD WALKER,                    Case No. C 07-2857 SC

11         Plaintiff,                 **MEMORANDUM OF POINTS
                                      AND AUTHORITIES IN
12  v.                                SUPPORT OF PLAINTIFF'S
                                      OPPOSITION TO DEFENDANT
13  PACIFIC PRIDE,                    PACIFIC PRIDE'S MOTION
                                      FOR SUMMARY JUDGMENT
14         Defendant.                 OR PARTIAL SUMMARY
                                      JUDGMENT**
15
                                      Hearing Date:  November 2, 2007
16                                    Hearing Time:  10:00 a.m.
                                      Courtroom:     1
17                                    Trial date:    January 22, 2008
18

19

20

21

22

23

24

25

26

27
   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PACIFIC
28                      PRIDE'S MOTION FOR SUMMARY JUDGMENT
                                      -i-

1

# Table of Contents

2

Table of Contents..................................................................................................p. ii

3

Table of Authorities.............................................................................................p. iv

4

I.   INTRODUCTION.........................................................................................p. 1

5

II. STATEMENT OF ISSUES TO BE DECIDED............................................p. 2

6

III. RELEVANT FACTS.....................................................................................p. 3

7

      A.    The Accident.........................................................................................p. 3

8

      B.    O.S.H.A. Safety Violations..................................................................p. 3

9

      C.    Pacific Pride's Control Over Its Franchisee.......................................... p. 4

10

      D.    Direct Inconsistencies Made by Defendant in Their Memorandum
             of Points of Authorities as Set Forth in Unsubstantiated and

11

             Uncorroborated Affidavits....................................................................p. 6

12

      E.    Facts Supporting Claim for Exemplary Damages.....................................p. 7

13

IV.  ARGUMENT..................................................................................................p. 9

14

      A. Legal Standard for Opposing Summary Judgment..........................................p. 9

15

      B.    Summary Judgment Should Be Denied Because There Are
             Genuine Issues of Material Fact In Dispute That Are Sufficient to

16

             Allow the Trier of Fact to Reasonably Conclude That an

17

             Agency Relationship Exists....................................................................p. 9

      C.    Despite Defendant Pacific Pride's Representations to the Contrary,

18

             Pacific Pride Is Hardly a Mere Automated Credit Service Provider.
             Pacific Pride Is a Commercial Fueling Company....................................p. 13

19

      D.    Defendant's Self Serving Disclaimer Is Not Controlling with

20

             Regard to the True Nature and Power of Pacific Pride, Inc.'s
             Franchise Agreement............................................................................p. 14

21

      E.    Provisions of Pacific Pride's Franchise Agreement Have a

22

             Direct Bearing on the Harm Suffered by Plaintiff Donald
             Walker..................................................................................................p. 14

23

      F.    The Controls Set Forth in the Franchise Agreement Are Sufficient

24

             to Create an Agency Relationship Whether or Not the Controls
             Were Actually Exercised by Pacific Pride.............................................. p. 15

25

26

27

28

1

G.    Public Policy Supports Holding Defendant Pacific Pride
      Accountable for its Participation in the Agency Relationship with Sf
2     Petroleum..............................................................................................p. 16

3     H.    Exemplary Damages Are Appropriate as Defendant's Callous
            Disregard for Human Safety, Both Before and after this Tragic
4           Accident May Be Considered..........................................................p. 16

5     V.  CONCLUSION.........................................................................................p. 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Table of Authorities

2

3 **Cases**

4  *Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284........................................p. 11, 12, 13

5  *City of Los Angeles v. Vaughn,* (1961) 55 Cal.2d.198........................................p. 15

6  *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 169 Cal.Rptr. 691....................p.17

7  *Hale v. Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 117 Cal.Rptr. 146......................p.17

8  *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825........................................p. 9

9  *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541................................pp. 9, 10, 13

10  *Lipson v. Superior Court* (1982) 31 Cal.3d. 362, 374........................................p. 9

11  *Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610................................p. 14

12  *Weeks v. Baker & McKenzie* (1998) 74 Cal.Rptr.2d 510, 63 Cal.App.4th 1128.................p.17

13  *Weiss v. Chevron, U.S.A., Inc.,* (1988) 204 Cal.App.3d 1094............................pp. 10, 11, 14

14

15

16 **Secondary Sources**

17  *9 Witkin, Cal.Proc. 4th* (1997) Section 957....................................................p. 16

18  *Restatement (Second) of Torts,* § 909(d)....................................................p.16, 17

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PACIFIC PRIDE'S MOTION FOR SUMMARY JUDGMENT**

-iv-

# I. INTRODUCTION

This Honorable Court should deny Defendant Pacific Pride, Inc.'s ("Pacific Pride") motion for summary judgment or partial summary judgment because there are genuine issues of material fact in dispute that must be resolved by a jury at trial. Specifically, numerous triable issues of material fact support the conclusion that Pacific Pride's relationship with San Francisco Petroleum ("SF Petroleum") is one of *principal to agent*, notwithstanding the defendant's assertion that its franchisee was an independent contractor.

Plaintiff was the victim of a catastrophic accident that occurred on July 21, 2005, while working for SF Petroleum, when an operator negligently drove a forklift into him while he was stooped down cleaning up a fuel spill in accordance with company policy.

Plaintiff's evidence demonstrates that Defendant, Pacific Pride, the franchisor, had the right of substantial control over SF Petroleum, its franchisee, thereby creating an agency relationship, subjecting Pacific Pride to liability for its agent's negligence. Specifically, plaintiff shows that the relevant documents between the parties, which include not only the Franchise Agreement, but also the Operations Manual and the Offering Circular, provide Pacific Pride with the power to control numerous aspects of the operations of its franchisees, including for example: site location and physical condition of the site; safety measures including fuel spillage incidents; products and product quality sold at the site; accounting and auditing; insurance; hours of operation; and termination of the franchisee for failure to follow the contract requirements and the law.

The deposition testimony of the defendant's officers further support plaintiff's evidence that Pacific Pride had substantial control over its franchisee, to the contrary of the limited statements set forth by defendant in its brief. Further, plaintiff submits uncontradicted expert opinion evidence as to the controls in place and industry standards requiring a franchisor to ensure uniform safety procedures in a situation such as this.

In the final analysis, Pacific Pride is a large fuel distributing business that has a direct

1  pecuniary interest in the products sold at each franchise and the image it portrays of itself as a

2  reliable *uniform* system of fueling sites.  It has an Operations Manual which addresses how to

3  handle fuel spills and which it requires franchisees to follow.  It profits from the sale of lubricants

4  which it knows requires the use of forklifts; and it has now had two opportunities to submit expert

5  testimony rebutting plaintiff's position that franchise industry standards require supervision of the

6  franchisee by the franchisor similar to the supervision by a parent over a child, but failed to do so.

7  Under these circumstances, plaintiff should not be denied his day in court because of defendant's

8  incorrect contention that there are no triable issues of material fact.

9       Certainly, genuine issues of material fact remain in dispute as to whether defendant Pacific

10  Pride exercises sufficient control over SF Petroleum to establish that an agency, not independent

11  contractor, relationship exists.  Accordingly, defendant's motion for summary judgment should be

12  denied.

13                    **II.  STATEMENT OF ISSUES TO BE DECIDED**

14  1.    Whether Pacific Pride maintains sufficient control, or right of control, over its franchisee

15        so that it can be held liable for negligent failure to provide adequate safety measures.

16  2.    Whether a franchisor may conclusively define its legal relationship to its franchisees

17        though its franchise agreement in calling its franchisees independent contractors where

18        facts to the contrary may exist.

19  3.    Whether Pacific Pride's alleged failure to provide adequate safety measures contributed to

20        the subject accident.

21  4.    Whether Pacific Pride's knowledge that fuel spills were a common occurrence at its

22        franchises, and that heavy equipment, such as forklifts, were used at many of its franchises

23        constitute a sufficient basis for seeking exemplary damages for conscious disregard for

24        human safety due to complete failure to take any interest in the subject accident.

25  5.    Plaintiff concedes its premises liability cause of action should be dismissed.

26

27

28

1                                   **III.  RELEVANT FACTS**

2    **A.    The Accident.**

3           On July 21, 2005, Plaintiff Donald Walker was working at Pacific Pride's SF Petroleum

4    site located at 2121 Third Street, San Francisco, California.  Pacific Pride and SF Petroleum are in

5    a franchisor - franchisee business relationship.

6           Donald Walker was a fuel deliveryman employed by SF Petroleum at the time of the

7    accident.  He was in the process of cleaning a fuel spill which occurred while transferring from his

8    truck to the tanks that supply the Pacific Pride fuel dispensers.  In accordance with Pacific Pride's

9    company policy[1], Mr. Walker was cleaning the fuel spillage with absorbent materials he

10   maintained in his truck for that specific purpose.  The company provided no warning cones,

11   barricades, or noise devices for use during this clean-up process even though fuel spillage was a

12   common occurrence at franchises, many of which employ forklifts.

13          During this clean-up, plaintiff was violently struck by a forklift operated by an uncertified

14   driver who could not see in front of his load.  The driver was cited by OSHA for negligently

15   driving the forklift while front-loaded.

16          Plaintiff sustained numerous permanent injuries and is now a complete quadriplegic.

17   **B.    O.S.H.A. Safety Violations.**

18          The State of California, via its Division of Occupational Safety and Health ("OSHA"),

19   conducted a thorough follow-up investigation of this accident and found numerous safety

20   violations.  OSHA Investigator Armstrong Lum concluded: (1) that the forklift operator involved

21   was uncertified[2], (2) even after this serious accident the operator did not receive refresher

22

23

24

─────────────────────

25          [1] See Ex. 1 to Dec. of Webb. Operations Manual, Ch. 9.

26          [2] See Ex. 2 to Dec. of Webb, Lum depo. p.37

27   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PACIFIC
     PRIDE'S MOTION FOR SUMMARY JUDGMENT

28   -3-

1   training[3]; (3) the forklift was in a defective condition[4]; (4) forklift operating instructions were not

2   posted[5]; (5) a month after Lum formally notified the executives of the failure to post forklift

3   operating instructions, he returned to the site only to find that said instructions still had not been

4   posted[6]; (6) no corrective measures were put in place after the accident[7]; (7) the forklift operator

5   was driving the forklift with a dumpster in front, making it impossible for him to see plaintiff while

6   he was cleaning up the fuel spill[8].

7          When asked about the significance of these numerous OSHA violations that contributed to

8   an accident at its San Francisco franchise, Pacific Pride's President stated in his deposition that

9   OSHA violations **do not concern him**.[9]

10  **C.      Pacific Pride's Control Over Its Franchisee.**

11         The facts of this case clearly show that Pacific Pride either exercises, or has the undisputed

12  right to exercise control over vital aspects of SF Petroleum's franchise.  These controls include,

13  but are not limited to: (1) the products SF Petroleum is allowed to sell[10]; (2) SF Petroleum's

14  location and appearance[11]; (3) mandatory training and orientation of employees[12]; (4) direct and

15

16

17         [3] See Ex. 2 to Dec. of Webb, Lum depo. p.37

18         [4] See Ex. 2 to Dec. of Webb, Lum depo. P.28

19         [5] See Ex. 2 to Dec. of Webb, Lum depo. p. 28

20         [6] See Ex. 2 to Dec. of Webb, Lum depo. p. 32

21         [7] See Ex. 2 to Dec. of Webb, Lum depo. p.39

22         [8] See Ex. 2 to Dec. of Webb, Lum depo. pp. 51-52

23         [9] See Ex. 3 to Dec. of Webb, Harris depo. pp. 87-88

24         [10] See Ex. 3 to Dec. of Webb, Harris depo. pp. 57, 58, 96, 106

25         [11] See Ex. 4 to Dec. of Webb, Offering Circular pp. 12, 20, 32; also Ex. 5, Franchise Agreement p.11

26         [12] See Ex. 4 to Dec. of Webb, Offering Circular p.12, 21

27

28

1    automatic access to bank accounts[13]; (5) hours of operation[14]; (6) regular royalty and transaction

2    fees[15]; (7) electronic monitoring of sales[16]; (8) operation of franchise site, including required

3    signage,[17] required services, and required clean-up of fuel spills[18]; (9) restricting who, by virtue of

4    prior criminal record, may not operate a franchise[19]; (10) required contribution of franchises to

5    Pacific Pride's advertising campaign[20]; (11) required uniformity in the appearance and operation

6    of each franchise site[21]; (12) required dedication of fuel dispenser islands exclusively to Pacific

7    Pride sales[22]; (13) required payment of fees to Pacific Pride for sales of lubricants when purchased

8    with Pacific Pride access cards[23]; (14) requirement that franchise "must name Pacific Pride as an

9    additional insured" in a liability policy[24]; (15) Pacific Pride's right to enter and inspect site, at all

10   reasonable times[25]; (16) Pacific Pride's right to terminate its franchisee for failure to follow its

11   operational requirements,[26] which include the requirements to maintain a legal and safe site

12   _____

13       [13] See Ex. 3 to Dec. of Webb, Harris depo. pp.69-70

14       [14] See Ex. 4 to Dec. of Webb, Offering Circular p.12; also Ex. 1, Operations Manual pp.3-6; also Ex.3, Harris
     Depo., pp.25-26

15       [15] See Ex. 4 to Dec. of Webb, Offering Circular pp.5-8

16       [16] See Ex. 3 to Dec. of Webb, Harris Depo. pp. 69

17       [17] See Ex. 6 to Dec. of Webb, Declaration of Leon Gottlieb; also see Ex. 1, Operations Manual pp.61, 71.

18       [18] See Ex. 1 to Dec. of Webb, Operations Manual, Ch.9

19       [19] See Ex. 4 to Dec. of Webb, Offering Circular, p.35

20       [20] See Ex. 3 to Dec. of Webb, Harris depo. p.73

21       [21] See Ex. 4 to Dec. of Webb, Offering Circular p.17; also see Ex. 5, Franchise Agreement pp.15, 19

22       [22] See Ex. 7 to Dec. of Webb, Falche Depo. pp.103-104

23       [23] See Ex. 3 to Dec. of Webb, Harris depo. p.93

24       [24] See Ex. 5 to Dec. of Webb, Franchise Agreement, p. J-15

25       [25] See Ex. 5 to Dec. of Webb, Franchise Agreement p. J-15

26       [26] See Ex. 5 to Dec. Of Webb, Franchise Agreement, p. 56; also Ex. 1, Operations Manual, Ch.9

27   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT PACIFIC
     PRIDE'S MOTION FOR SUMMARY JUDGMENT

28                                              -5-

1  location.[27]

2       Additionally, submitted herein is the declaration of a longtime franchise expert attesting to

3  the fact that Pacific Pride exercised substantial control over SF Petroleum so that an agency

4  relationship existed and to the fact that *the industry standard requires a franchisor to put in place*

5  *and enforce uniform safety procedures for the operation of its franchises*[28].  According to the

6  declaration by another longtime expert on workplace safety, such basic procedures would have

7  been as simple to implement as requiring the placement of cones or some other visual barrier

8  around fuel spills during clean-up[29].  Pacific Pride not only failed to do so in this case, but also has

9  failed to even proffer any contradictory expert testimony whatsoever.

10  **D.**    **Direct Inconsistencies Made by Defendant in Their Memorandum of Points of**
     **Authorities as Set Forth in Unsubstantiated and Uncorroborated Affidavits.**

11       Defendant has made major misleading statements to this Court in an apparent effort to

12  distance itself from its responsibility to atone for the damages suffered by plaintiff.  Defendant

13  presents this Honorable Court with dubious and unsubstantiated claims of sales based on biased

14  declarations.

15       The following graph sets forth only a few of the significant contradictions in defendant's

16  motion, which are obvious upon reading defendant's deposition testimony.

---

24  [27] See Ex. 5 to Dec. of Webb, Franchise Agreement, p. J-54; *also* Ex.4 to Dec. Of Webb, Offering Circular
p.35

25  [28] See Ex. 6 to Dec. of Webb, Dec. of Gottlieb, Para's. 26 & 27; also see Ex. 8, Dec. of Buffington, Para. 11

26  [29] See Ex. 8 to Dec. of Webb, Dec. of Buffington, Para's 11-14

| Defendant's New Assertions | Plaintiff's Rebuttal |
|---|---|
| "San Francisco Petroleum's average monthly bulk sales not involving Pacific Pride's cardlock system amount to approximately 1,200,000 gallons of the 1,360,000 gallons of fuel." Defendant's Memorandum of Points and Authorities, p.5, lines 20-22, p.6 line 1. Relying upon the Declaration of Falche, pars. 6, 9. | Defendant's statement is misleading.  The only sales of fuel at the 2121 Third Street, San Francisco station occur exclusively via the Pacific Pride Cardlock system at the dedicated Pacific Pride dispensers.[30]  Additionally, Defendant fails to attach any credible evidence supporting it's conclusory and self serving accounting of SF Petroleum "sales." |
| "Pacific Pride collects and remits payment to San Francisco Petroleum for only the 20,000 gallons San Francisco Petroleum sells per month to other Pacific Pride Franchisee's and customers." Defendant's Memorandum of Points and Authorities, p., lines 20-22, p.6 line 1. Relying upon the Declaration of Falche, pars. 6, 9. | Pacific Pride receives payment from every single purchase at the 2121 Third Street, San Francisco fuel station.[31]  See Exhibit 2, Harris Depo. p. 93 **"We take a share of any transaction that occurs on the Pacific Pride network."** |
| "In addition to fuel, SF Petroleum sells approximately 10,000-15,000 gallons of bulk oil and lubricants.  None of those sales are authorized processed, or settled using Pacific Pride's payment system." Defendant's Memorandum of Points and Authorities, p.6, lines 8-10. Relying upon the Declaration of Falche, par. 11. | Defendant advertises the availability of lubricants at its Pacific Pride sites. Additionally, Pacific Pride collects revenue from the sale of lubricants at the 2121 Third Street, San Francisco station.[32]  See Exhibit 2, Harris Depo. p. 93 **"We take a share of any transaction that occurs on the Pacific Pride network."** |

As set forth above, Defendant's newly asserted statement of facts is <u>wholly undermined</u> by the previous testimony of the very persons whose declarations are used to support these positions. It is therefore impossible to accept defendant's contention that there are no triable issues of material fact where their current version of the facts conflicts directly with their own prior testimony.

**E.    Facts Supporting Claim for Exemplary Damages.**

Pacific Pride has been in the business of buying and selling fuel products for over twenty

---

[30] See Ex. 7 to Dec. of Webb, Falche depo.pp.21, 104

[31] See Ex. 7 to Dec. of Webb, Falche depo. p.80; also see Ex. 3 to Dec. of Webb, Harris Depo. p. 93.

[32] See Ex. 3 to Dec. of Webb, Harris depo. pp.93-94; also see Ex. 7, Falche depo. pp.81-82; also see Ex.9, Excerpts from Pacific Pride's Website.

1  years. It has grown from a small business with several locations in Oregon into, by the admission

2  of its own President, David Harris, "the largest commercial fueling network in the country" and is

3  "still growing."[33]  It now has well over 1,200 locations in thirty-eight States.  Its own Offering

4  Circular touts its management team as having "extensive" experience in every phase of the fuel

5  distribution business.[34]  Its President began in the fuel business as a sixteen-year-old service

6  station attendant and, by his own testimony, has worked in every phase of the fuel industry, from

7  the bottom to the top.[35]  As such, he is as *intimately familiar* with the use of forklifts for moving

8  bulk lubricants at stations as he is with the occurrence of fuel spills during delivery.[36]

9  Furthermore, Pacific Pride proclaims, in its literature and on its websites, that its franchises are

10 uniformly safe, clean, well-lit, and modern.[37]

11      Despite the numerous standards Pacific Pride sets forth in its Franchise Agreement,

12 Operating Manual and Offering Circular requiring the franchisee to maintain a safe site and

13 comply with all applicable laws, Pacific Pride did no investigations to ensure compliance either

14 prior to or after the accident.[38]  Even after OSHA cited SF Petroleum for its reckless, unsafe

15 conditions that lead to the accident, Pacific Pride still failed to investigate, ensure remedial

16 measures were taken, or to discipline its agent for violating the franchise requirements of

17 maintaining a safe site in compliance with the law, thereby ratifying the reckless conduct of its

18 agent.[39]  Indeed, the President of Pacific Pride voiced his malicious disregard for the violations

19

20      [33] See Ex. 3 to Dec. of Webb, Harris depo. p.83

21      [34] See Ex. 3 to Dec. of Webb, Harris depo. p.11

22      [35] See Ex. 3 to Dec. of Webb, Harris depo. p.11

23      [36] See Ex. 3 to Dec. of Webb, Harris depo. p.28

24      [37] See Ex. 3 to Dec. of Webb, Harris depo. pp.42–43; *also* Ex. 9. Website advertisement

25      [38] See Ex. 6 to Dec. of Webb, Declaration of Leon Gottlieb

26      [39] See Ex. 6 to Dec. of Webb, Declaration of Leon Gottlieb

27

28

1    when he succinctly stated that OSHA violations at Pacific Pride sites are of no concern.[40]

2    **IV.  ARGUMENT**

3    **A.    Legal Standard for Opposing Summary Judgment.**

4          A motion for summary judgment is properly granted **only** if the evidence in support of the

5    motion establishes that there is **no** triable issue of material fact. (*See Lipson v. Superior Court*

6    (1982) 31 Cal.3d. 362, 374 (Emphasis Added)).   Summary judgment is a drastic remedy to be

7    ordered with caution because it denies the adverse party the right to a trial.  Doubts as to the

8    propriety of summary judgment should be resolved **against** granting the motion. (*See Huynh v.*

9    *Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830.)

10   **B.    Summary Judgment Should Be Denied Because There Are Genuine Issues of**
     **Material Fact in Dispute That Are Sufficient to Allow the Trier of Fact to**
11   **Reasonably Conclude That an Agency Relationship Exists.**

12         "The law is clear that a franchisee may be deemed to be the agent of the franchisor." (*See*

13   *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547.)  Defendant Pacific Pride

14   exercises substantial control over all key aspects of SF Petroleum's fueling operation.  These

15   controls are mandated by Pacific Pride and set forth in the Franchise Agreement; Operations

16   Manual, the Offer Circular; and, as set forth in the declaration of franchise expert Leon Gottlieb,

17   are enough to conclude that an agency relationship exists between Defendant Pacific Pride and SF

18   Petroleum.

19         In *Kuchta v. Allied Builders Corp.*, a **jury** found that Allied Builders Corporation, the

20   franchisor, was liable for the actions of its franchisee, Raphael Weiner, in large part because the

21   **franchise agreement granted the franchisor substantial control over the franchisee.** (*Id.,*

22   *Kuchta* at 551.)   Allied Builders Corporation appealed arguing that the franchise agreement was

23   insufficient evidence for the jury to find that an agency relationship existed.  The court held, "[i]n

24   the field of franchise agreements, the question of whether the franchisee is an independent

25

26         [40]  See Ex. 3 to Dec. of Webb. Harris depo. p.87-88.

1  contractor or an agent is ***ordinarily one of fact***, depending on whether the franchisor exercises

2  complete or substantial control over the franchisee." (*Id, Kuchta,* at 548.)  In *Kuchta,* evidence

3  that the franchise agreement gave the franchisor the following controls was sufficient to show that

4  an agency relationship existed between the franchisor and franchisee: (1)  The right to control the

5  location of the franchisee's place of business; (2) To prescribe minimum display equipment; (3)

6  To regulate the quality of the goods used or sold; (4) Right of inspection; (5) The right to share in

7  the profits; (6) Audit the franchisee's books; *(Id.)*

8         Defendant's moving papers, while attaching the Franchise Agreement, make no mention of

9  the numerous controls Pacific Pride retains as part of its Franchise Agreement.  Furthermore,

10  Defendant fails to provide the court with the requirements set forth in their Operations Manual or

11  the requirements described in the Offering Circular, which further contain requirements and

12  directives for the franchisee to follow.[41]

13         As set forth by plaintiff, however, and elucidated in the Declarations of franchise expert

14  Leon Gottlieb and safety expert Gary Buffington, and the deposition testimony of Defendant's

15  own executives, Pacific Pride retains substantial control over SF Petroleum, many of which are

16  the same as Allied Builders did in *Kuchta v. Allied Builders Corporation.*  The controls exercised

17  by Pacific Pride over SF Petroleum include, but are not limited to: (1) Displays and signage;(2)

18  Site location; (3) Physical condition of the site; (4) Safety measures including fuel spillage

19  incidents; (5) Products and product quality sold at the site; (6) The exclusive means of payment

20  for the product; (7) The software and corresponding hardware used to track day-to-day payment

21  and accounting; (8) Inter-company transfer payments; (9) Compelled creation of a joint bank

22  account which Pacific Pride has access; (10) Advertising; (11) Required insurance naming Pacific

23  Pride as an additional insured; (12) Hours of operation; (13) The power to terminate; and (14)

24  The right to audit SF Petroleum's books.

25

26         [41]  See Ex. 4 to Dec. of Webb, Offering Circular p.12; also see Ex. 1, Operations Manual pp.3-6.

27
28

1    Defendant argues that the Franchise Agreement entered into by Pacific Pride establishes

2    insufficient franchisor control to create an agency relationship **as a matter of law**.  Defendant

3    states that this case is somehow analogous to *Weiss v. Chevron, U.S.A., Inc*, (1988) 204

4    Cal.App.3d 1094, yet, a cursory review of the facts clearly distinguishes this case from *Weis*.

5    After defendant Chevron filed its motion for summary judgment, plaintiff incorrectly relied on the

6    belief that it was the defendant's burden to **disprove** that an agency relationship existed between

7    Chevron and its franchisee in an accident case. (*See Weiss; Id.,* at 1098)  Because of this

8    erroneous assumption, the plaintiff failed to dispute **any facts** supporting Chevron's claims and

9    further, failed to assert any facts supporting her allegation that Chevron had control over its

10    franchisee. (*See Weiss; Id.,* at 1099)  Consequently, the *Weiss* court had no alternative but to

11    grant Chevron's motion for summary judgment.

12    Unlike the plaintiff in *Weiss*, Plaintiff Donald Walker identifies for the Court numerous

13    provisions of Pacific Pride's Franchise Agreement and Pacific Pride's Operations Manual, as well

14    as the deposition testimony by Pacific Pride's principals, demonstrating Pacific Pride's substantial

15    control over SF Petroleum.  Furthermore, Plaintiff's evidence disputes two of the most important

16    material facts submitted by Defendant Pacific Pride 1) the source and extent of Pacific Pride,

17    Inc.'s control over SF Petroleum; and 2) whether Pacific Pride has day to day control over SF

18    Petroleum.  Additionally, Plaintiff attaches the Declaration of franchise expert Leon Gottlieb in

19    support of his claim that an agency relationship exists between Pacific Pride and SF Petroleum.

20    Accordingly, the facts in this case are ***wholly dissimilar*** to those which support the decision in

21    *Weiss*, and therefore, *Weiss* is not controlling.

22    Likewise, Defendant's citation to *Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284,

23    is inapposite to the facts presented to this Court.  In *Cislaw*, the defendant Southland was able to

24    show that the franchisee had control over its inventory and that the controls set forth in the

25    Franchise Agreement did not go beyond the mere protection of the Southland's trademarks. (*Id.*

26    at 1296.)  In reaching this conclusion, the court found it important that the franchisor had no

27

28

1    control over the franchisee's inventory. (*Id.* at 1293.)

2          Here, Pacific Pride has control over what SF Petroleum can and cannot sell.[42]

3    Furthermore, there was no showing in *Cislaw* of the exhaustive and numerous controls Plaintiff

4    has set forth above, most of which go well beyond the mere protection of trademarking.

5          Indeed, Pacific Pride not only admits to its many controls over the operation of its

6    franchises, including detailed procedures for cleaning up fuel spills[43], but also admits to having the

7    right to terminate franchises for failure to comply with its operational requirements[44].  Pacific

8    Pride not only dictates products that must be sold by its franchises[45], but also dictates the hours

9    that its franchises must do business[46].  Pacific Pride not only reaps profits from every transaction

10   and sale by its franchisees[47], but also automatically extracts revenues *directly* from its franchisees'

11   bank accounts[48], amounting to an agency rather than an independent contracting relationship.

12   Furthermore, Pacific Pride offers expert advice from its experienced executives on how to

13   generate more revenue from the sale of its products[49].  Most importantly, Pacific Pride has direct

14   control of the operation of the franchisees' manned sites, since it shares in the profits from not

15   only fuel sales, but also from lubricant sales[50], which necessarily entail the use of forklifts,

16

17

18   [42] See Ex. 3 to Dec. of Webb, Harris depo. pp. 57, 58, 96, 106

19   [43] See Ex.1 to Dec. of Webb, Operations Manual Ch. 9; also see Ex. 3 to Dec. of Webb, Harris Depo. p.47

20   [44] See Ex. 5 to Dec. of Webb, Franchise Agreement, p. 56

21   [45] See Ex. 3 to Dec. of Webb, Harris Depo. pp. 57, 96

22   [46] See Ex. 3 to Dec. of Webb, Harris Depo. pp. 25-26

23   [47] See Ex. 7 to Dec. of Webb, Depo. of Falche pp. 81-82; also Ex. 3 to Dec. of Webb, Harris Depo. pp. 93-94

24   [48] See Ex. 3 to Dec. of Webb, Harris Depo. p.69-70

25   [49] See Ex. 3 to Dec. of Webb, Harris Depo. pp 97-98

26   [50] See Ex. 3 to Dec. of Webb, Harris Depo. pp.91-92; also Ex. 7 to Dec. of Webb, Falche depo. p.81

27

1   including the forklift involved in the subject accident[51].

2       Despite these extensive controls, Pacific Pride asserts that SF Petroleum is an independent

3   contractor.  However, this Honorable Court need not accept at face value defendant's newly

4   submitted contention that most of SF Petroleum's income is not Pacific Pride related where

5   defendant has failed to provide credible evidence supporting such contention: no financial

6   statements, invoices, receipts, or even the attestation of an accountant have been submitted.  In

7   contrast to what defendant would have this court believe, SF Petroleum and every one of Pacific

8   Pride's 1,200-plus franchises must dedicate their fuel dispensary islands to products that can only

9   be purchased by the use of a Pacific Pride card.

10      Indeed, Pacific Pride's controls are parallel with those exercised in *Kuchta* and, of course,

11  are far more extensive than those found in *Cislaw*.  Hence, the plaintiff has presented sufficient

12  indicia of control by Pacific Pride for a jury to reasonably conclude there was an agency

13  relationship.  Accordingly, the jury should be permitted to make that determination; defendant's

14  motion should be denied.

15  **C.    Despite Defendant Pacific Pride's Representations to the Contrary, Pacific Pride Is
        Hardly a Mere Automated Credit Service Provider. Pacific Pride Is a Commercial**
16      **Fueling Company.**

17      In its moving papers, Defendant Pacific Pride attempts to obfuscate its relationship with

18  SF Petroleum by representing to the Court that it is a financial service provider.

19      Defendant Pacific Pride's comparison would only be analogous to this current action if

20  Mastercard were to require Citibank to, among other requirements, set forth safety and fuel

21  spillage requirements, acquire approval for their site location; carry specific products; create a

22  joint account for which Mastercard has unfettered access to deposit and withdraw; compel

23  payments to other banks using their card at different locations; require separate and exclusive

24  machines for the use of their card; exclusive software for processing their card; and host of other

25

26      [51] See Ex. 7 to Dec. of Webb, Falche depo. p.71

27
28

1    requirements which are "similar to the relationship" Pacific Pride *clearly* has with its franchisees.

2    To the contrary, Pacific Pride's Franchise Agreement provides for controls far beyond that of a

3    credit service provider. In fact, only 1 of the 36 Sections of the Franchise Agreement is

4    attributable to the credit aspect of the Pacific Pride's commercial fueling business.

5    **D.    Defendant's Self Serving Disclaimer Is Not Controlling with Regard to the True
         Nature and Power of Pacific Pride, Inc.'S Franchise Agreement.**

6            Defendant contends that no agency exists because Section 26 of its Franchise Agreement

7    states that no agency relationship was created. However, it has been consistently held that

8    disclaimers such as the one contained in the Franchise Agreement are not dispositive of the true

9    nature of the relationship between the parties. (*See Nichols v. Arthur Murray, Inc.* (1967) 248

10   Cal.App.2d 610, 613; *see also Kuchta*, 98 Cal.Rptr. at 591 ("the declarations of the parties in the

11   agreement respecting the nature of the relationship are not controlling.")) Furthermore, the fact

12   that Defendant Pacific Pride requires SF Petroleum to acquire insurance which names Pacific

13   Pride as an additional insured clearly evidences Defendant Pacific Pride's own belief that the

14   disclaimers in the Franchise Agreement were insufficient to insulate them from the liability of SF

15   Petroleum's actions. Therefore, *Defendant's self-serving disclaimer has no control over the*

16   *agency relationship created by the extensive controls created by the remainder of Pacific Pride's*

17   *Franchise Agreement.*

18   **E.    Provisions of Pacific Pride's Franchise Agreement Have a Direct Bearing on the
         Harm Suffered by Plaintiff Donald Walker.**

19           In *Weiss*, the court stated that "Plaintiff offered no evidence of any connection between

20

21   the cause of her injuries and any aspect of the business over which Chevron did exert or could

22   have exerted any control." (*See Weiss v. Chevron, U.S.A., Inc.*, (1988) Cal.App.3d 1094 at 1100.)

23   Here, both the Franchise Agreement and the Operations Manual address the conditions and create

24   the right to inspect the conditions of the site location with the clear requirement that the

25   franchisee obey all laws and maintain a safe environment. Pacific Pride advertises their belief in

26   safety to the public and requires safety in the Offer in Pacific Pride, Inc.'s **CONFIDENTIAL**

27

28

1  Operation Manual which is not to be shared with the public. The Operation Manual echoes the
2  requirements to keep the site safe and further elaborates the specifications related to maintaining a
3  safe Pacific Pride Site.[52] In fact, Pacific Pride maintains the right to **terminate** the Franchise
4  Agreement if the franchisee fails to maintain a legal and safe site location.[53]

5      Pacific Pride has a fuel spillage provision in the Franchise Agreement because it knows
6  spillages happen. Pacific Pride also knows that forklifts are utilized at franchisee sites. Despite
7  Pacific Pride's admitted knowledge of the common use of forklifts at their sites, it fails to include
8  safety requirements for the franchisee to follow.

9      The fact remains that SF Petroleum maintained an unsafe Pacific Pride site which had
10 numerous OSHA violations, a terminable offense pursuant to provisions of the Franchise
11 Agreement and Operation Manual. Pacific Pride continued accepting money from SF Petroleum
12 while wearing blinders regarding SF Petroleum's various breaches of the Franchise Agreement
13 and ongoing failures to comply with the provisions of the Operations Manual.

14 **F.    The Controls Set Forth in the Franchise Agreement Are Sufficient to Create an**
        **Agency Relationship Whether or Not the Controls Were Actually Exercised by**
15      **Pacific Pride.**

16      Whether or not Pacific Pride actually exercised the controls is has over SF Petroleum is of
17 little relevance with respect to its responsibility for SF Petroleum's actions. California has long
18 held that, with respect to whether there is an agency relationship or an independent contractor,
19 "the most important factor is the **right to control** the manner and means of accomplishing the
20 result desired . . .**whether or not that potential control is exercised** with respect to all details."
21 (*See City of Los Angeles v. Vaughn*, (1961) 55 Cal.2d.198.) Here, Plaintiff has shown that the
22 Offering Circular, Franchise Agreement and Operations Manual create significant controls which
23 Pacific Pride could have exercised. Pacific Pride's decision to create these controls and thereafter

24

25      [52] See Ex. 1 to Dec. of Webb, Operations Manual. Ch.9

26      [53] See Ex. 5 to Dec. of Webb. Franchise Agreement. p. J-54; *also* Ex.4 . Offering Circular p.35

27
28

1  fail to exercise them is not relevant in determining their agency, however, is negligent the trier of

2  fact finds that an agency relationship exists.

3      As set forth herein, the Franchise Agreement and Operations Manual provides SF

4  Petroleum with rules and requirements demanded by Pacific Pride. The Franchise agreement

5  further provides that these rules and requirements are not arbitrarily set by Pacific Pride and that

6  termination for violation of the Franchise Agreement or Operations Manual may result in the

7  termination of the franchise.

8  **G.    Public Policy Supports Holding Defendant Pacific Pride Accountable for its Participation in the Agency Relationship with Sf Petroleum.**

9      In addition to the myriad of facts plaintiff has presented above to show the substantial

10  control Pacific Pride maintains over its franchisees, including SF Petroleum, public policy insists

11  that the jury be permitted to determine Pacific Pride's agency relationship. California is among

12  the most progressive states with regard to protecting the rights of injured citizens. (*See* 9 Witkin,

13  Cal.Proc. 4th (1997) Section 957, p. 1002.) In the case at bar, Pacific Pride, makes financial

14  royalties from each transaction, amounting to millions of dollars. It compels the creation of

15  accessible accounts, the means of payment, the products sold, the accounting and the location of

16  the frachisee. Yet, when it is time to take responsibility for providing a safe working environment

17  here in California, this Oregon corporation suddenly wants to pretend to be at arm's length from

18  its franchisee. Pacific Pride gladly reaps the profits of doing business in California while hiding

19  behind its self-serving agreements. When asked to account for its failure to adequately protect its

20  employees and the citizens of California, it uses every legal pretext to avoid doing so. This Court

21  ought not to allow such an inequitable and irresponsible result and should, therefore deny

22  defendant's motion for summary judgment herein to permit the jury to decide the issue.

23  **H.    Exemplary Damages Are Appropriate as Defendant's Callous Disregard for Human Safety, Both Before and after this Tragic Accident May Be Considered.**

24

25      California follows the Restatement of Torts, section 909, which provides that punitive

26  damages can be awarded against a principal because of an act by an agent if ratified:

27
28

> Punitive damages can properly be awarded against a master or other principal
> because of an act by an agent if . . .
>   (d) the principal or a managerial agent of the principal ratified or approved the
> act.

(*Restatement (Second) of Torts*, § 909(d); *see also Weeks v. Baker & McKenzie* (1998) 74 Cal.Rptr.2d 510, 522-23, 63 Cal.App.4th 1128 (citing *Hale v. Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 691, 117 Cal.Rptr. 146 (*overruled on other grounds in Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822, fn. 5, 169 Cal.Rptr. 691, 620 P.2d 141)) Ratification is a question of fact and may be proved by circumstantial as well as direct evidence that shows the intention of the principal to adopt or approve the act in question. (*Hale*, 42 Cal.App.3d at 691, 117 Cal.Rptr. at 154.)

Here, although Pacific Pride set forth requirements for the franchisee to adhere to, including maintaining a safe site that complied with all applicable laws, it completely failed to take any steps to determine whether Pacific Pride was in compliance. After the accident, OSHA issued its citations, fully informing Pacific Pride of the serious misconduct of its agent and resulting catastrophic injury. Yet Pacific Pride still did nothing to repudiate its agent's misconduct - it undertook no investigations, it failed to ensure corrective measures were taken to prevent future unsafe conditions, and it failed to discipline its agent for the conduct. In fact, the President of Pacific Pride callously admitted that he had no concern for OSHA violations at Pacific Pride sites.

Defendant has profited greatly and has grown expansively throughout the United States through the claim that its franchises are **uniformly safe** and in compliance with industry standards. Yet, while retaining control and authority to terminate a franchise for its failure to comply with safety requirements, its President disavows any interest in OSHA violations which, in this case, contributed to this tragic and easily preventable accident. Since Pacific Pride has both the power and the right to dictate safety measures, it also has the responsibility to do so.

Pacific Pride's reckless disregard and complete failure to ensure even minimal safety or compliance with the law, as required in its own franchise documents and as attested to by

1  uncontradicted expert affidavits, provides ample evidence for a jury to impose punitive damages.

2  Further, its complete failure to repudiate its agent's serious misconduct is ample evidence for a

3  jury to reasonably conclude Pacific Pride ratified those acts. Accordingly, defendant's motion for

4  summary judgment regarding exemplary damages should be denied, so the jury may appropriately

5  review the evidence at trial.

6                              **V. CONCLUSION**

7        Where defendant has far superior experience and knowledge in every stage of the

8  operation of a fuel distribution business, and gives orders and advice to its franchises on

9  management of the sites, while taking substantial monies from transactions at the sites through

10 dedicated Pacific Pride fuel dispenser islands, defendant knows fully that a catastrophic accident

11 such as the one here might well occur, absent appropriate safety measures. Plaintiff's experts so

12 testify, while **defendant has no contrary evidence as to industry standards** in its brief, making

13 its instant motion futile. Accordingly, defendant's motion should be denied.

14 Dated: October 10, 2007                    LAW OFFICES OF MARK L. WEBB

15

16                                           By

17                                                Mark L. Webb, Esq.
                                                 Attorneys for Plaintiff
18                                               DONALD WALKER