Peter M. Hart, (State Bar No. 107920)
Brad D. Fell, (State Bar No. 212988)
Matthew R. Halloran, (State Bar No. 236461)
WRIGHT, ROBINSON, OSTHIMER & TATUM
44 Montgomery Street, 18th Floor
San Francisco, California 94104-4705
Telephone: (415) 391-7111
Telefax: (415) 391-8766

Attorneys for Defendant
PACIFIC PRIDE SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD WALKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC PRIDE,<br><br>Defendant. | Case No. C 07-2857 SC<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO PACIFIC PRIDE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   November 2, 2007<br>Time:   10:00 a.m.<br>Dept:   1<br>Judge:  Honorable Samuel Conti<br><br>**Trial Date: January 22, 2008** |

# Table of Contents

Table of Contents ................................................................................................ p. ii

Table of Authorities ........................................................................................... p. iii

I. Introduction ................................................................................................. p. 1

II. Pacific Pride's Reply to Plaintiff's Statement of
    Relevant Facts .......................................................................................... p. 2

    A. Plaintiff's Relevant Facts, Subsection A:
    "The Accident." ....................................................................................... p. 3

    B. Plaintiff's Relevant Facts, Subsection B:
    "OSHA Safety Violations." ...................................................................... p. 3

    C. Plaintiff's Relevant Facts, Subsection C:
    "Pacific Pride's Control Over Its Franchisee." ......................................... P. 4

    D. Plaintiff's Relevant Facts, Subsection D:
    "Direct Inconsistencies Made by Defendant
    in Their Memorandum of Points and Authorities
    as Set Forth in Unsubstantiated and Uncorroborated
    Affidavits." ............................................................................................... p. 8

    E. Plaintiff's Relevant Facts, Subsection E:
    "Facts Supporting Claim for Exemplary Damages." ................................ p. 9

III. Pacific Pride's Reply to Plaintiff's Argument ............................................. p. 9

    A. The Legal Standard .................................................................................. p. 9

    B. Plaintiff Misconstrues California Law Governing
    Franchisor Liability for the Acts and Omissions
    Of Franchisees. ......................................................................................... p. 10

    C. Pacific Pride's Reply to Plaintiff's Policy Argument ............................... p. 12

    D. Pacific Pride's Reply to Plaintiff's Argument for
    Exemplary Damages ................................................................................ p. 12

IV. Conclusion ................................................................................................. p. 12

ii

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

# Table of Authorities

**Cases**

*Bank of Calif., N.A. v. Opie* (9th Cir. 1981) 663 F.2d 997 ................................................................p. 10

*Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284 ................................................................p. 10

*Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825 ................................................................p. 10

*Kutcha v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541 ................................................pp. 10, 11

*Lipson v. Superior Court* (1982) 31 Cal.3d 632................................................................p. 10

*Weiss v. Chevron U.S.A., Inc.* (1988) 204 Cal.App.3d 1094................................................p. 11

**Statutes, Regulations, and Rules**

Federal Rules of Civil Procedure 56 ................................................................p. 10

iii

**Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment**

## I. Introduction

Pacific Pride Services, Inc. ("Pacific Pride") moved this Court for summary judgment or partial summary judgment based on the following: (1) Pacific Pride is shielded from liability for the actions or omissions of its independent contractor franchisees; (2) plaintiff's accident had nothing to do with Pacific Pride's commercial fueling system; and (3) Pacific Pride has no ownership interest in San Francisco Petroleum, Inc. ("SF Petroleum") or its premises.[1] Finally, Pacific Pride preemptively addressed plaintiff's claim for punitive damages, while noting that plaintiff still has yet to amend his complaint to request such damages.

In opposition to Pacific Pride's motion, plaintiff attempts to manufacture disputes of fact where no legitimate disputes exist. Plaintiff does so by putting forth unsubstantiated claims about the relationship between Pacific Pride and SF Petroleum, misstatements of fact, misleading references to deposition testimony, and references to the conclusory opinions of unqualified experts who themselves relied upon inadmissible evidence as the bases for those opinions. Moreover, plaintiff alleges that Pacific Pride "has now had two opportunities to submit expert testimony rebutting plaintiff's position that franchise industry standards require supervision of the franchisee by the franchisor similar to the supervision of a parent over a child, but failed to do so."[2]

This Court does not require the assistance of an expert to grasp the law governing franchise agreements. Plaintiff's position is legally erroneous on its face. If every franchisor exercised control over its franchisees akin to that of a parent over a child, then *all* franchisees would be deemed agents of their franchisors. The general rule shielding franchisors from liability for the acts and omissions of its franchisees *would not be* the general rule. Moreover, Pacific Pride submitted the Franchise Agreement governing the relationship between it and SF Petroleum as an Exhibit in support of this motion. The Court can read the terms of that

---

[1] Plaintiff does not dispute the fact that the premises liability cause of action should be dismissed. See Plaintiff's Opposition, p. 2, Statement of Issue to be Decided no. 5.
[2] Plaintiff's Opposition, p. 2.

1

agreement for itself, and plaintiff has yet to state any reason why this Court should disregard the terms of the agreement in deference to purported "industry standards."

Plaintiff has failed to produce any material evidence or cogent argument in opposition to defendant's motion. Accordingly, Pacific Pride again respectfully requests that this Court grant summary judgment or partial summary judgment of each of plaintiff's causes of action in Pacific Pride's favor.

## II. Pacific Pride's Reply to Plaintiff's Statement of Relevant Facts

Plaintiff's Opposition and its supporting papers are replete with unsupported, misleading, and sometimes blatantly false assertions of fact. For instance, the Opposition's Introduction refers to Pacific Pride as a "large fuel distributing business."[3] Plaintiff has been informed repeatedly that Pacific Pride is in the business of providing a commercial fueling transaction authorization, processing, and financial settlement system. Pacific Pride neither owns, nor distributes fuel. Its franchisees distribute fuel, and some of those sales are processed through Pacific Pride's automated system. That is as close as Pacific Pride comes to fuel distribution.

In an even more glaring example, plaintiff's counsel's Declaration, paragraph 11 states: "Attached hereto as Exhibit 9 is a true and correct copy of excerpts from the Website Advertisements of Pacific Pride …"[4] Plaintiff's Exhibit 9 is *not* a Pacific Pride advertisement. It is an advertisement by one of Pacific Pride's franchisees, Snider Petroleum, notably not even the franchisee at issue in this litigation. Plaintiff's counsel was informed of this fact during the deposition of Cynthia Condon,[5] Pacific Pride's Vice President for Franchise Operations, yet plaintiff's counsel attributes the document to defendant nonetheless. Counsel's decision to do so is in keeping with plaintiff's entire theory of this case, treating Pacific Pride and its franchisees as interchangeable entities despite all relevant law to the contrary.

While Plaintiff's Opposition and its supporting papers abound with examples such as

---

[3] Plaintiff's Opposition, p. 1.
[4] Declaration of Mark L. Webb, ¶ 11.
[5] See transcript of Deposition of Cynthia R. Condon, pp. 100-101, attached as Exhibit One to the Declaration of Bradley D. Fell.

2

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

these, Pacific Pride is limited in the number of pages it can include with this Reply. Accordingly, defendant will focus primarily on attempting to correct those misstatements of fact contained within Plaintiff's Opposition, section III, entitled "Relevant Facts."

**A.     Plaintiff's Relevant Facts, Subsection A: "The Accident."**

In section III subsection A, plaintiff claims that at the time and location of his accident, Pacific Pride "provided no warning cones, barricades, or noise devices for use during this clean-up process even though fuel spillage was a common occurrence at franchises, many of which employ forklifts."[6] Plaintiff provides no evidence to support any part of this statement.

**B.     Plaintiff's Relevant Facts, Subsection B: "OSHA Safety Violations."**

In section III subsection B, plaintiff asserts that Pacific Pride's President David Harris stated in his deposition simply: "OSHA violations do not concern him."[7] Read in its proper context, that is not what Mr. Harris said. Mr. Harris said the following:

> Q:   MR. WEBB [plaintiff's counsel]:  Do OSHA violations concern you if they're brought to your attention at a Pacific Pride location?
>
> MR. HART [counsel for Pacific Pride]:  Object to the form of the question.
>
> THE WITNESS: Not directly.
>
> Q:   BY MR. WEBB: How about indirectly
>
> A:   No.
>
> Q:   Okay. It's not part of the self-inspection critique that's necessary for a franchise to report that they've been cited by OSHA?
>
> A:   No.
>
> Q:   Okay. Is it part of the self-inspection to let you know that someone was seriously injured on a Pacific Pride location?
>
> MR. HART:  Object to the form of the question.
>
> THE WITNESS: No.
>
> Q:   BY MR. WEBB: Okay. And it's fair to say that that's just not part of Pacific Pride's interest; right?

---

[6] Plaintiff's Opposition, p. 3.
[7] Plaintiff's Opposition, p. 4.

3

A:   It has nothing to do with us.[8]

Mr. Harris's indication that Pacific Pride "has nothing to do" with injuries or OSHA violations at Pacific Pride's franchisees' sites is hardly the same thing as a blanket statement that "OSHA violations do not concern him."

**C.   Plaintiff's Relevant Facts, Subsection C: "Pacific Pride's Control Over Its Franchisee."**

Plaintiff's section III subsection C, provides a laundry list of controls defendant is alleged to have exercised over SF Petroleum.[9] As an initial evidentiary matter, the majority of this laundry list cites to unauthenticated hearsay documents, which are therefore inadmissible.

For instance, as evidence of seven of these "controls," plaintiff cites to a Pacific Pride "offering circular" attached to the Declaration of Mark L. Webb as Exhibit 4.[10] Mr. Webb's declaration states that he obtained the circular off of the Internet, and used it in the course of taking deposition testimony without objection from Pacific Pride.[11] Pacific Pride *did* object to the document, but that fact is irrelevant. Mr. Webb is not the author of the document, nor is he Pacific Pride's custodian of records. Thus, the document is unauthenticated hearsay, and it is inadmissible as evidence in this matter.

As evidence of five Pacific Pride "controls," plaintiff cites to Pacific Pride's "Franchise Agreement," attached to the Declaration of Mark L. Webb as Exhibit 5.[12] Once again, Mr. Webb claims to have obtained the document off of the Internet and used it during depositions without objections. Again, Pacific Pride did object, and again, the document is unauthenticated hearsay. Indeed, at the bottom of each page of the Franchise Agreement attached to Mr. Webb's Declaration, one can see that the sample agreement is identified as "Pacific Pride Franchise Agreement, CA 2006." The Franchise Agreement relevant to this case was entered into by Pacific Pride and SF Petroleum in 2004. It was signed by the parties, and attached as Exhibit 2

---

[8] See Exhibit 3 to the Declaration of Mark L. Webb, pp. 87:21-88:13.
[9] See Plaintiff's Opposition, pp. 4-6.
[10] See Plaintiff's Opposition, footnotes 11, 12, 14, 15, 19, 21, 27.
[11] See Declaration of Mark L. Webb, ¶ 6.
[12] See Plaintiff's Opposition, footnotes 11, 24, 25, 26, 27.

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

to the Declaration of Cynthia R. Condon in support of this motion.

Finally, plaintiff cites repeatedly to the transcript of the deposition of David Harris, and Pacific Pride's Operations Manual. On a number of counts, plaintiff misstates the testimony of Mr. Harris and the provisions contained within the Operations Manual. For instance, the first in plaintiff's list of purported "controls" asserts that Pacific Pride controls the products SF Petroleum is allowed to sell.[13] In support of that assertion plaintiff cites to the deposition of David Harris, pp. 57, 58, 96, and 106.

Notwithstanding the fact that plaintiff neglected to attach pages 96 and 106 of the Harris deposition transcript, the referenced pages indicate only that Pacific Pride requires that its franchisees offer three grades of fuel. This is precisely in keeping with the parties' "Supplemental Franchise Agreement for PrideNet Sites," wherein the franchisee's duties include only one reference to what products PrideNet sites *must* sell, and those products are gasoline and Diesel fuel.[14]

Pacific Pride is the franchisor of an automated commercial fueling transaction authorization, processing, and financial settlement system. If its franchisees do not have fuel to sell, then their system has no use. To imply that this simple requirement is analogous to an exercise of complete or substantial control over SF Petroleum's entire inventory of products is misleading at best.

Moreover, and as noted in defendant's moving papers, the Franchise Agreement, Section 11, subsections D and E specifically state:

> If requested by FRANCHISEE, PACIFIC PRIDE will offer the names of vendors for any equipment, inventory, supplies, or other material necessary for the operation of FRANCHISEE'S Sites. Except as specified in paragraph F below, FRANCHISEE is not obligated to purchase from these vendors, provided the products purchased by FRANCHISEE meet the required specifications set forth in the Operations Manual.[15]
>
> Notwithstanding the above, FRANCHISEE acknowledges that PACIFIC PRIDE

---

[13] See Plaintiff's Opposition, footnote 10 and accompanying text.
[14] See p. 5 of the Supplemental Franchise Agreement, found at Exhibit L-5 to the Franchise Agreement attached to the Declaration of Cynthia R. Condon as Exhibit A.
[15] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, D.

5

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

does not participate in the day to day operation of FRANCHISEE'S business, nor does PACIFIC PRIDE advise it how to operate the day to day aspects of the business.[16]

Plaintiff's Opposition also cites to transcript of the Deposition of Mr. Harris, pages 69-70, in support of plaintiff's assertion that Pacific Pride enjoys "direct and automatic access to [SF Petroleum's] bank accounts."[17] Notwithstanding the fact that plaintiff neglected to attach page 70, page 69 alone makes it clear that this is hardly what Mr. Harris said. The relevant portion of the transcript reads as follows:

> Q:   BY MR. WEBB: ... Okay. So the point is, that is a charge that's paid by – out of the proceeds of San Francisco Petroleum if the cardholder uses another location for gas; right?
>
> A:   I don't know what you mean when you say it's paid out of the proceeds. We charge San Francisco Petroleum a transaction fee.
>
> Q:   Got it. Now, as I understand it – and we're going to get to it in a minute – the way that these fees are actually obtained by Pacific Pride is that there are two days per month that the money is taken out of an account; is that right? Electronic transfers?
>
> MR. HART:   Object to the form of the question.
>
> THE WITNESS:   Could you – I don't – when you say the way the fees are obtained ...
>
> Q:   BY MR. WEBB: How do you collect your money?
>
> A:   We bill the franchisees twice monthly.
>
> Q:   Right. But you don't wait for them to send you a check, do you?
>
> A:   We do it through electronic funds transfer.[18]

To sum up, Pacific Pride recoups transaction fees twice a month from its franchisee via an electronic funds transfer. That is hardly "direct and automatic access" to SF Petroleum's bank accounts as Plaintiff's Opposition suggests.

As a final example, plaintiff asserts that Pacific Pride exercised control over "operation of franchise site, including ... required clean-up of fuel spills."[19] As evidence of this control,

---

[16] Franchise Agreement, attached to the Declaration of Cynthia R. Condon as Exhibit A, § 11, E.
[17] See Plaintiff's Opposition, footnote 13 and accompanying text.
[18] See Exhibit 3 to the Declaration of Mark L. Webb, p. 69:4-22.
[19] See Plaintiff's Opposition, footnotes 17, 18, and accompanying text.

6

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

plaintiff cites to Pacific Pride's Operations Manual, and to the Declaration of plaintiff's "franchise expert," Leon Gottlieb.[20]

Pacific Pride cited the only section of its Operations Manual to even address fuel spills in its initial moving papers. That section, Chapter 9, section 2 subsection B offers only *suggested* guidelines concerning spills and their prevention. Those suggestions included cleaning spills as soon as possible, and developing a spill contingency plan including training personnel "and maintaining an industry-approved cleanup material on hand."[21] Nowhere in the Manual are there any actual requirements or specific directions controlling the manner in which franchisees go about cleaning fuel spills at their sites.

Finally, Plaintiff's Opposition cites to Mr. Gottlieb's Declaration "attesting to the fact that Pacific Pride exercised substantial control over SF Petroleum so that an agency relationship existed and to the fact that *the industry standard requires a franchisor to put in place and enforce uniform safety procedures for the operation of its franchisees.*[22]

First of all, and as alluded to above, the question of whether Pacific Pride exercised sufficient control to create an agency relationship as a matter of law is a question for this Court, not plaintiff's expert. Second, any supposed "industry standard" is irrelevant in this case, because Pacific Pride and SF Petroleum's legally executed Franchise Agreement controls the relationship between the parties. Neither Pacific Pride nor SF Petroleum disputes the validity of that agreement.

Finally, nothing in Mr. Gottlieb's Declaration shows that he is even qualified to provide testimony regarding the relationship between Pacific Pride and SF Petroleum. Mr. Gottlieb's *curriculum vitae* shows no experience in dealing with franchisor-franchisee relations in the commercial fueling industry. To the contrary, the bulk of his experience appears to be in food sales. Notably, Mr. Gottlieb offers this Court no reason whatsoever to believe that there is such a thing as a "franchise industry standard" that applies uniformly to the International House of

---

[20] *Id.*
[21] See Operations Manual, attached to the Declaration of Cynthia R. Condon as Exhibit B, ch.9, § 2.
[22] Plaintiff's Opposition, footnote 28 and accompanying text.

7

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

Pancakes, Big Boy Restaurants, Taco Bell, etc., and to the commercial fueling franchise at issue here.

**D.   Plaintiff's Relevant Facts, Subsection D:  "Direct Inconsistencies Made by Defendant in Their Memorandum of Points and Authorities as Set Forth in Unsubstantiated and Uncorroborated Affidavits."**

In support of Pacific Pride's Motion for Summary Judgment or Partial Summary Judgment, defendant submitted the Declaration of Robert Falche.  Mr. Falche is the President of SF Petroleum.

Mr. Falche's Declaration noted that at the time of plaintiff's accident, SF Petroleum sold approximately 1,340,000 gallons of fuel per month.[23]  Of that total, approximately 1,200,000 gallons were sold in bulk, and did not pass through Pacific Pride's automated authorization, processing and financial settlement system in any way.[24]  Of the 140,000 gallons of fuel SF Petroleum *did* sell at its cardlock site, approximately 120,000 gallons are sold to SF Petroleum's own customers.[25]  SF Petroleum invoices, collects, and approves all credit for its own customers.[26]  Pacific Pride collects and remits payments to SF Petroleum only for the 20,000 gallons SF Petroleum sells per month to other Pacific Pride franchisees' customers.[27]

In addition Mr. Falche noted that SF Petroleum sells approximately 10,000-15,000 gallons of bulk oil and lubricants per month.[28]  None of those sales are authorized, processed, or settled using Pacific Pride's payment system.[29]

In Plaintiff's Opposition section III subsection D, plaintiff attempts to characterize Mr. Falche's Declaration as a set of "dubious and unsubstantiated claims."[30]  Notably, plaintiff offers no reason to doubt the veracity of Mr. Falche's sworn Declaration.  Instead, plaintiff again merely cites to the deposition of David Harris, wherein Mr. Harris stated:  "We take a share of

---

[23] Declaration of Robert Falche, ¶ 5.
[24] Declaration of Robert Falche, ¶¶ 6, 9.
[25] Declaration of Robert Falche, ¶ 7.
[26] Declaration of Robert Falche, ¶ 8.
[27] *Id.*
[28] Declaration of Robert Falche, ¶ 11
[29] *Id.*
[30] Plaintiff's Opposition, p. 6.

8

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

any transaction that occurs on the Pacific Pride network."[31]

In so arguing, plaintiff is either seriously misstating the evidence, or again simply failing to understand the nature of Pacific Pride's business. Pacific Pride *does* take a share of any transaction that occurs on the Pacific Pride network. But as clearly stated by Mr. Falche, the only fuel sales at SF Petroleum that utilize that network are the 140,000 gallons per month sold through the Pacific Pride cardlock. SF Petroleum's bulk sales are delivered directly to customers in SF Petroleum tanker trucks, and do not involve Pacific Pride's cardlock in any way. Similarly, Pacific Pride does not share in *any* transaction involving sales of lubricants at SF Petroleum, because those lubricants cannot be purchased using the Pacific Pride card.[32]

Finally, plaintiff refers to Mr. Falche's Declaration as "unsubstantiated,"[33] and notes elsewhere that "no financial statements, invoices, receipts, or even the attestation of an accountant have been submitted."[34] Mr. Falche's sworn affidavit is evidence, and it is uncontested. He is not a party to this case, and he certainly did not have to put his company's financial statements, invoices, etc., into the record in this matter for his Declaration to be accorded the evidentiary value to which it is entitled.

E.  **Plaintiff's Relevant Facts, Subsection E: "Facts Supporting Claim for Exemplary Damages."**

The bulk of plaintiff's contentions in Plaintiff's Opposition section III subsection E, are adequately addressed above and in Pacific Pride's moving papers. Pacific Pride will further note only that plaintiff provides no evidence whatsoever for his contention regarding the President of Pacific Pride's "*intimate*" familiarity with the use of forklifts for moving bulk lubricants.[35]

### III. Pacific Pride's Reply to Plaintiff's Argument

A.  **The Legal Standard**

Federal law governs the legal standard for granting summary judgment or partial

---

[31] See Plaintiff's Opposition, p. 7.
[32] Incidentally, Pacific Pride franchisees' *can* install the equipment necessary to enable customers to purchase lubricants using the Pacific Pride card, but SF Petroleum has never chosen to do so.
[33] Plaintiff's Opposition, p. 6.
[34] Plaintiff's Opposition, p. 13.
[35] Plaintiff's Opposition, p. 8.

9

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

summary judgment in the Federal Courts. Thus, plaintiff's reliance upon California State authority in Plaintiff's Opposition section IV, A: "Legal Standard for Opposing Summary Judgment," is misplaced.[36]

Under Federal law, a party against whom a claim is asserted may, at any time, move for a summary judgment in the party's favor as to all or any part thereof.[37] The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law.[38]

In diversity actions, the state law creating the right sued upon governs issues such as the elements of the action, measure of damages, applicable defenses, etc.[39]

**B.    Plaintiff Misconstrues California Law Governing Franchisor Liability for the Acts and Omissions of Franchisees.**

To the extent that plaintiff attempts to address the case law cited in Pacific Pride's Memorandum of Points and Authorities, plaintiff does so inaccurately. Plaintiff relies first and foremost on *Kutcha v. Allied Builders, Corp.*[40] Plaintiff asserts that in *Kutcha*, "evidence that the franchise agreement gave the franchisor the following controls was sufficient to show that an agency relationship existed between the franchisor and franchisee: (1) The right to control the location of the franchisee's place of business; (2) to prescribe minimum display equipment; (3) to regulate the quality of the goods used or sold; (4) right of inspection; (5) the right to share in the profits; [and] (6) audit the franchisee's books."[41]

As noted in Pacific Pride's moving papers, this interpretation of *Kutcha* was already rejected by the California Court of Appeals in *Cislaw v. Southland Corp.*[42] There, the Court observed:

---

[36] Specifically, plaintiff relies upon the State Court cases *Lipson v. Superior Court* (1982) 31 Cal.3d 632, and *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825.
[37] Federal Rules of Civil Procedure ("FRCP") 56(b).
[38] FRCP 56(c).
[39] *Bank of Calif., N.A. v. Opie* (9th Cir. 1981) 663 F.2d 997, 980.
[40] *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547.
[41] Plaintiff's Opposition p. 10.
[42] *Cislaw v. Southland Corp.* (4th Dist. 1992) 4 Cal.App.4th 1284.

10

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

> [I]n *Kuchta v. Allied Builders Corp.*, *supra*, 21 Cal.App.3d 541, the franchise agreement gave the franchisor most of the rights which the Cislaws point to here, but also the right to control the builder franchisee's performance of every detail of its construction, from plans and specifications through work in progress to completion of the project. (Id. at p. 547.) Thus, there was evidence sufficient to support an implied finding of agency.[43]

In *Cislaw*, as in this case, the franchisor did not exercise such extensive controls over its franchisee's day-to-day operations, and thus the franchisor was shielded from liability. In so finding, and as also previously noted in Pacific Pride's moving papers, the Court determined:

> The cases, taken as a whole, impliedly recognize that the franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent.[44]

Plaintiff attempts to distinguish *Cislaw* by noting that there, the franchisor "had no control over the franchisee's inventory."[45] Plaintiff then makes the misleading assertion that Pacific Pride "has control over what SF Petroleum can and cannot sell."[46] As already noted above, Pacific Pride's only requirement for its franchisees is that they offer three grades of fuel. That is decidedly *not* the same thing as exercising substantial or complete control over a franchisee's entire inventory.[47]

Finally, plaintiff attempts to distinguish this case from *Weiss v. Chevron*,[48] asserting that the plaintiff in that case lost because plaintiff "failed to assert any facts supporting her allegation that Chevron had control over its franchisee."[49] On the contrary, the positions of the parties in *Weiss* were entirely analogous to the positions of the parties here, and the Court in *Weiss* based its decision on analysis of the contracts between the parties, just as this Court should.

In short, plaintiff has stated no grounds for this Court to break with California law governing the relationship between franchisors and franchisees, and the general rule that franchisors cannot be held vicariously liable for their franchisees' alleged negligence.

---

[43] *Cislaw*, *supra*, 4 Cal.App.4th at 1296.
[44] *Id.* at 1292.
[45] Plaintiff's Opposition, pp. 11-12.
[46] Plaintiff's Opposition, p. 12.
[47] See *supra*, p. 5.
[48] *Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094.
[49] Plaintiff's Opposition, p. 11.

11

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

**C.      Pacific Pride's Reply to Plaintiff's Policy Argument.**

California has a comprehensive system of Worker's Compensation in place to assist and compensate individuals injured in workplace accidents. Defendant offers no opinion as to the adequacy of that system to compensate workers such as plaintiff, but notes only that California's duly elected legislature enacted the laws necessary to create that system, and it remains in effect today.

**D.      Pacific Pride's Reply to Plaintiff's Argument for Exemplary Damages.**

Pacific Pride addressed the lack of evidence in support of plaintiff's claim for punitive damages in its initial moving papers. Pacific Pride will only add that plaintiff has *still* not amended his complaint to add a claim for punitive damages, despite the fact that Pacific Pride addressed the issue in its moving papers. Accordingly, since there is in fact no claim for punitive damages currently before this Court, Pacific Pride contends that the issue should be deemed waived, and plaintiff should be barred from amending the complaint to add such a claim in the future.

### IV. Conclusion

Plaintiff's injuries were suffered in the course of his employment with San Francisco Petroleum, Inc. San Francisco Petroleum, Inc. is an independent contractor franchisee of Pacific Pride Services, Inc. Thus, Pacific Pride cannot be held vicariously liable for any injuries plaintiff sustained as a result of his employer's or coworkers' negligence. Pacific Pride Services, Inc. has no ownership interest in San Francisco Petroleum, Inc.'s property, and plaintiff does not dispute the fact that his premises liability cause of action against Pacific Pride should be dismissed. Finally, plaintiff can state no legitimate grounds justifying an award of punitive damages in this case, and even if plaintiff could, plaintiff has failed to submit a plea for such damages.

Accordingly, defendant again respectfully requests that the Court grant summary judgment or partial summary judgment of both of plaintiff's causes of action in Pacific Pride's favor, and deem any claim for punitive damages from this plaintiff waived.

12

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment

| | | |
|---|---|---|
| 1 | DATE: October 19, 2007 | WRIGHT ROBINSON OSTHIMER & TATUM |
| 2 | | |
| 3 | | by: _[signature]_____ |
| 4 | | PETER M. HART |
| | | MATTHEW R. HALLORAN |
| 5 | | Attorneys for defendant |
| | | PACIFIC PRIDE SERVICES, INC. |

Reply to Plaintiff's Opposition to Pacific Pride Services, Inc.'s
Motion for Summary Judgment or Partial Summary Judgment